IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

ROBERT SAIZ,

    Plaintiff,

vs.                                                              No.CIV 97-0233 JC/WWD

KENNETH S. APFEL,[1]
Commissioner of Social Security,

    Defendant.

## MAGISTRATE JUDGE'S PROPOSED FINDINGS AND RECOMMENDED DISPOSITION
**Proposed Findings**

    1. This matter comes before the Court upon plaintiff's Motion to Reverse and Remand for a Rehearing, filed November 6, 1997 [10-1]. The Commissioner denied plaintiff's request for Supplemental Security Income ("SSI") benefits. Plaintiff, age 32, alleges a disability which commenced December 30, 1991, due to low back pain, loss of vision in the right eye, gout, and multiple joint pain.

    2. After conducting an administrative hearing, the Commissioner's Administrative Law Judge ("ALJ") denied plaintiff's applications, concluding that Mr. Saiz has a residual functional capacity for light work and that his nonexertional impairments do not significantly limit his work capacity. Although the ALJ found that Mr. Saiz cannot perform his past relevant work as laborer

---

[1] President Clinton appointed Kenneth S. Apfel Commissioner of Social Security as of August 29, 1997. Pursuant to Rule 25(d)(1) of the Federal Rules of Civil Procedure, Kenneth S. Apfel should be substituted as defendant for Acting Commissioner John J.Callahan who was the appropriate party at the time of the underlying decision. No further action need be taken to continue this suit by reason of the last sentence of section 205(g) of the Social Security Act, 42 U.S.C. § 405(g).

and car wash attendant, he relied on the grids to conclude that plaintiff is not disabled. The Appeals Council denied Mr. Saiz' request for review of the ALJ's decision, thus the ALJ's decision is the final decision of the Commissioner. Plaintiff now seeks review of that final decision pursuant to 42 U.S.C. §405(g). Mr. Saiz has a tenth grade education but is illiterate in English.

3. The standard of review in social security appeals is whether the Commissioner's final decision, in this case the ALJ's decision, is supported by substantial evidence. Thompson v. Sullivan, 987 F.2d 1482, 1487 (10th Cir. 1993)(citations omitted). Additionally, the Commissioner's final decision can be reversed if the ALJ failed to apply the correct legal tests. Id. (citation omitted).

4. Plaintiff alleges that the ALJ (1) failed to consider Mr. Saiz' impairments in combination at step three of the sequential evaluation; (2) failed to analyze how Mr. Saiz' nonexertional impairments effect his residual functional capacity at step four of the sequential evaluation; and finally, (3) failed to carry his burden of proof at step five of the sequential evaluation.

5. At the first four levels of the evaluation, the claimant must show: (1) that he is not working; (2) that he has an impairment or combination of impairments severe enough to limit the ability to do basic work activities; (3) that the impairment meets or equals one of the listing of impairments in 20 C.F.R. Pt. 404, Subpt.P, App.1; or (4) that he is unable to perform work done in the past. At the fifth step, the Commissioner must produce evidence regarding the claimant's ability to perform other work. Reyes v. Bowen, 845 F.2d 242, 243 (10th Cir. 1988).

6. Mr. Saiz last worked in 1984 as a roofer, at the age of 19. Tr. at 167. He has chronic

low back pain which radiates down his legs and up to the left arm and which "is always there." Tr. at 148. He was diagnosed with bilateral lumbar spondylosis. He also complains of numbness in his hip due to back pain (Tr. at 100), occasional numbness in his hands and feet (Tr.at 159), and has been diagnosed with gout. Tr. at 96. Plaintiff takes various prescription medications for the pain, for treatment of the goiter and to help him sleep. Tr. at 122, 151.

**First Alleged Error**

7. Plaintiff alleges that the ALJ failed to consider Mr. Saiz' impairments in combination at step three of the sequential evaluation. Zebley by Zebley v. Bowen, 855 F.2d 67, 76 (3d Cir. 1988), aff'd, 493 U.S. 521 (1990) (Commissioner required to consider the combined impact of multiple impairments throughout the disability determination process). In his decision, the ALJ discussed Mr. Saiz' various impairments, including his hip condition and vision problem. Tr. at 17-18. He also correctly looked to the treating source for evidence of impairments and noted that plaintiff's visits "to his doctors have been for back complaints." Tr. at 18; see SSR 96-5P. The ALJ is not obligated to see medical facts in the record which are not there, whether considering them alone or in combination.

**Second Alleged Error**

8. Mr. Saiz next alleges that the ALJ failed to analyze how his nonexertional impairments affect his residual functional capacity. With regard to plaintiff's nonexertional impairments of poor right eye vision,[2] gout and numbness in his hands and feet, I find that the ALJ's analysis was based on substantial evidence. In a consultative report from December 1993, Dr. Davis found that plaintiff's vision was "not substantially impaired." Tr. at 101. Mr. Saiz reads the newspaper,

---

[2] Plaintiff had 20/100 in the right eye and 20/25 in the left eye, uncorrected. Tr. at 104.

3

watches TV, and was able to drive until August 1993 when his license was revoked for a fourth DWI.  Aside from his reports of numbness to the ALJ and to Dr. Davis, there are no medical findings or treatment related to this impairment.  Plaintiff's gout, for which he takes Allopurinol, was under control.  Tr. at 151.

9. However, I find substantial evidence lacking with regard to plaintiff's complaints of back pain which may preclude an ability to perform a full range of light work.  The ALJ's determination that clinical examinations revealed "only mild findings" for his back condition was based partly on the finding that plaintiff's complaints of disabling pain were not credible and partly on select portions of  Dr. Davis' report.  Tr. at 18, 21.

10. The ALJ noted an inconsistency between plaintiff's symptoms and his daily activities.  However, the evidence cited in the decision misrepresents the evidence actually in the record, and is therefore not based on substantial evidence.  For example, the ALJ noted that plaintiff helps with the household chores, and that he goes shopping for 3 to 5 hours.  Mr. Saiz did state that he helps his wife wash dishes and vacuum.  However, although his shopping excursions might last for 3 to 5 hours, Mr. Saiz told the ALJ that his wife accompanied him on these trips and that he spent a lot of the time on a bench inside the store.  Tr. at 159, 166.[3]  Dr. Davis also noted in the consultative report that plaintiff did a "minimal amount of chores."  Tr. at 100.  These activities, when presented in the manner in which they appear in the record, do not necessarily indicate an

---

[3] Although not brought up by the ALJ, plaintiff's representative noted at the hearing that he frequently shifted in his seat, and got up and down from time to time to change his position.  Tr. at 168.

ability to perform the standing, sitting and walking required for "at least light work." Tr. at 21.[4]

11.   Plaintiff reported to Dr. Davis that he thought he could "tolerate" lifting 30 pounds, but he also stated that he could not stand or walk for more than one hour at a time, and not more than four in an eight-hour period. Tr. at 202.   The doctor thought that a more reasonable limit for frequent lifting was 15 pounds. Id.  The ALJ chose to rely on the 30 pound lifting limit, but discounted the other functional limitations because they were based on plaintiff's description of symptoms and because they were inconsistent with the mild clinical findings. Tr. at 19.

12.   Dr. Davis also recommended a push-pull limit. Tr. at 137.  This type of limitation, if factored into the determination, would present a question regarding an ability to do light work. The ALJ was incorrect in failing to address this, nor did he discount this finding.[5] Clifton v. Chater, 79 F.3d 1007, 1009-10 (10th Cir. 1996) (the ALJ also must discuss the uncontroverted evidence he chooses not to rely upon, as well as significantly probative evidence he rejects).

13.   The ALJ has the ability to resolve conflicts in the medical evidence if he gives specific, legitimate reasons for doing so. Reyes v. Bowen, 845 F.2d 242, 245 (10th Cir. 1988). In this case, the conflicts in the record do not justify the ALJ's discounting portions of Dr. Davis' report on plaintiff's functional limitations.  The ALJ instead relied on the December 1991 and

---

[4] While the regulations fail to describe what constitutes a "good deal" of walking or standing, light work is understood to require an ability to do both for a *prolonged* period of time without substantial difficulty. See Lapinski v. Heckler, unpubl. op.,1986 WL 8935 at *2 (E.D.Pa) (emphasis added).

[5] Light work by definition is work that "requires a good deal of walking or standing, or ... involves sitting most of the time with some pushing and pulling of arm or leg controls." (citing 20 C.F.R. S 404.1567(b)).

January 1994 reports of Dr. Altman, an orthopedist. In both reports, Dr. Altman recommended that Mr. Saiz be referred to Division of Vocational Rehabilitation ("DVR") for "more moderate type work." Tr. at 81; 114 (plaintiff "certainly can do anything from moderate to light work").

    14. Plaintiff's treating osteopath, Dr. Shively, also believed that plaintiff was "capable of working in some capacity." Tr. at 85. Although this part of the inquiry goes more to plaintiff's third alleged error, the totality of this medical evidence does not provide substantial evidence for the ALJ's finding that Mr. Saiz can do a full range of at least light work. Thus, the reports of both Dr. Altman and plaintiff's treating physician are not necessarily inconsistent with Dr. Davis' report. I find that the medical reports were not considered in their entirety.

    15. Plaintiff contends that the ALJ failed to consider the evidence concerning Mr. Saiz' receiving General Assistance benefits. This contention is unfounded. First, a disability decision made by another governmental or nongovernmental agency is not determinative of disability and is therefore not binding on the Commissioner. Eason v. Chater, 951 F.Supp. 1556, 1562 (D.N.M. 1996). Second, the ALJ did inquire into this at the hearing. The fact that the ALJ did not delve into detail about these other benefits does not require remand on the issue. See Glass v. Shalala, 43 F.3d 1392, 1396 (10th Cir. 1994) (ALJ's investigative duty does not require reversal in any matter where the ALJ fails to exhaust every potential line of questioning).

    16. Given a lack of substantial evidence upon which the ALJ's finding of noncredibility is based and the incomplete consideration afforded to the medical evidence, I find that the ALJ's conclusion that plaintiff's nonexertional impairments did not pose any significant limitation on his ability to perform light work was not based on substantial evidence.

**Third Alleged Error**

17. Plaintiff claims that the ALJ failed to carry his burden of proof at step five of the sequential evaluation. I have already addressed some of the issues raised by the plaintiff relating to shortcomings in the ALJ's determination on residual functional capacity. However, the ALJ's insufficient credibility determination does not preclude a finding that plaintiff is still able to perform some work. Rather, it leaves open the possibility that a determination as to whether plaintiff is disabled would depend on the report of a vocational expert ["VE"] rather than an automatic application of the grids which does not allow for the existence of nonexertional impairments. See SSR 83-12 (discussing category of cases where claimant's nonexertional limitations place him between categories, such as a claimant who must alternate sitting and standing and advising that "a vocational expert should be consulted to clarify the implications for the occupational base").

18. Plaintiff is correct that the ALJ's conclusion relied more on a lack of evidence precluding the ability to do light work, rather than the presence of evidence to support his decision. This misplaced reliance "effectively shifts the burden back to the claimant." Channel v. Heckler, 747 F.2d 577, 579. (10th Cir. 1984) (it is not the claimant's burden "to prove that she cannot work at any level lower than her past relevant work; it is the [Commissioner's] burden to prove that she can").

19. If on remand, the ALJ determines that plaintiff's symptoms of disabling back pain are credible, then plaintiff may not be capable of light work where a durational capacity for sitting, standing and walking is limited. See Talbot v. Heckler, 814 F.2d 1456, 1463 (10th Cir. 1987) (need to alternate positions of sitting, standing and walking precludes the kind of extensive sitting,

standing and walking contemplated by the definition of light activity).[6]  In that case, a vocational expert's ("VE") advice is needed where there is evidence that plaintiff's ability to sit is limited. See Ragland v. Shalala, 992 F.2d 1056, 1059 (10th Cir. 1993).

20.  I note that plaintiff was referred to DVR and worked for a while at Goodwill before he was laid off.  The DVR counselor felt that "there is not a lot DVR can do" and recommended referral to the UNM Hospital as more in line with plaintiff's needs.  The ALJ ignored any part this evidence might play in determining plaintiff's residual functional capacity.  Instead, he focused on plaintiff's not showing up for his appointments at Goodwill because of a stomach flu or "family emergency."  Tr. at 18.  If anything, documentation from DVR suggests a limited ability to perform certain levels of work, as opposed to the full range of work required under the regulations in order to find a plaintiff not disabled based on the grids.

21.  Whether the ALJ can rely on the grids for a disability determination on remand is contingent on his findings on remand.  The ALJ should should re-examine plaintiff's credibility and whether his back pain precludes the ability to do a full range of light or sedentary work, or to what extent.  Gossett v. Bowen, 862 F.2d 802, 807 (10th Cir. 1988); Castellano v. Sec'y of HHS, 26 F.3d 1027, 1029 (10th Cir. 1994) (presence of nonexertional impairments precludes reliance on the grids only to the extent that such impairments limit the range of jobs available to the claimant).

22.  Also on remand, plaintiff's nonexertional impairments should be considered in light

---

[6]  Light work involves lifting no more than twenty pounds at a time with frequent lifting or carrying of objects weighing up to ten pounds, requires a good deal of walking, standing, or pushing and pulling when sitting is involved.  SSR 83-10; 20 C.F.R. § 404.1567(b).

of the new amendments related to alcoholism.[7] The issue of Mr. Saiz' chronic alcoholism was not raised in the briefs. However, the ALJ did examine this, and determined that plaintiff had no work-related alcohol problem. Tr. at 19.[8]

23. In sum, the ALJ did not fail to consider Mr. Saiz' impairments in combination at step three of the sequential evaluation; the ALJ did fail to analyze how Mr. Saiz' nonexertional impairments affect his residual functional capacity and also failed to carry his burden of proof at step five of the sequential evaluation.

## Recommendation

I recommend that plaintiff's Motion to Reverse and Remand for a Rehearing [10-1] be granted and that this cause be remanded to the Commissioner for the following purpose: to re-examine plaintiff's credibility and whether his back pain precludes the ability to do a full range of light or sedentary work; and if so, to what extent his symptoms preclude work activity. The ALJ should consult with a VE or other medical consultants if necessary. Timely objections to the foregoing may be made pursuant to 28 U.S.C. § 636(b)(1)(C).

UNITED STATES MAGISTRATE JUDGE

---

[7] On March 29, 1996, Congress enacted an amendment to the Social Security Act which provides that "an individual shall not be considered to be disabled . . . if alcoholism or drug addiction would (but for this subparagraph) be a contributing factor material to the Commissioner's determination that the individual is disabled." P.L. 104-121 §§105(a)(1) & (b)(1), amending U.S.C. §§ 423(d)(2) & 1382(c).

[8] Plaintiff stated that he was currently drinking 2 to 4 six-packs of beer a day. Tr. at 154. He quit for 6 months while in a court-ordered Antabuse program following his fourth DWI in August 1993. He started drinking again when he stopped the Antabuse and has continued ever since.